# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| JOHN STEPHEN RAVAN,<br><br>    *Plaintiff*,<br><br>v.<br><br>Sheriff CULLEN TALTON, *et al.*,<br><br>    *Defendants.* | CIVIL ACTION NO.<br>5:19-cv-00161-TES-TQL |

## ORDER ADOPTING THE UNITED STATES
## MAGISTRATE JUDGE'S RECOMMENDATION

Plaintiff John Stephen Ravan is blind, suffers from seizures requiring his use of a wheelchair, and experiences other severe medical ailments arising from an allergic reaction that he alleges occurred during his time in the Houston County Detention Center. *Ravan v. Talton*, No. 21-11036, 2023 WL 2238853, at *2 (11th Cir. Feb. 27, 2023). So as to be accurate and consistent, the Court adopts the factual summary of the Eleventh Circuit decision in this case, which in relevant part, provides:

> [Ravan's] allergic reaction manifested itself as "Stevens-Johnson syndrome" or "toxic epidermal necrolysis" ("SJS/TEN"). SJS/TEN is a single condition that covers a spectrum, with SJS representing the relatively less severe form and TEN representing the relatively more severe form. Either way, SJS/TEN is a "severe skin reaction" that causes "the skin . . . to blister and peel, forming very painful raw areas called erosions that resemble a severe hot-water burn. The skin erosions usually start on the face and chest before spreading to other parts of the body. In most affected individuals, the condition also damages the mucous membranes, including the lining of the mouth and airways[.]" "SJS/TEN often affects the eyes as well, causing

irritation and redness of the conjunctiva, which are the mucous membranes that protect the white part of the eye and line the eyelids, and damage to the clear front covering of the eye (the cornea) . . . . About 10 percent of people with [SJS] die from the disease, while the condition is fatal in up to 50% of those with [TEN]." Survivors can suffer long-term effects like hair loss, abnormal growth or loss of fingernails, impaired taste, difficulty urinating, and genital abnormalities.

Ravan said that, while Dr. Wrobel diagnosed him with SJS/TEN, he was kept in a solitary medical cell for weeks with bleeding and blistered legs, mouth, and genitals, with no treatment other than Tylenol and mouthwash. Ravan's health continued to deteriorate, and at one point, Ravan's mucous membrane came out of his eye. In response, a jail officer gave him only a plastic evidence bag to put the mucous membrane in. Ravan also developed a lump on his testicles, but when Ravan asked Dr. Wrobel to exam it, the doctor said, "I don't want to see or feel your balls again."

*Ravan*, 2023 WL 2238853, at *2.

Upon remand, Plaintiff—now represented by counsel—seeks to amend his latest operative pleading. [Doc. 213].[1] After Plaintiff filed his Motion to Amend [Doc. 213], the Medical Defendants[2] filed a brief in opposition, explaining their position regarding his proposed amendment. The United States Magistrate Judge reviewed the Motion and all

---

[1] Due to the complexity of the case, a quick procedural primer is likely helpful. Plaintiff initially filed this action on April 25, 2019, *pro se*. [Doc. 1]. Then the Court ordered Plaintiff to recast his pleading, which lead to several orders that screened out certain Defendants. Finally, after discovery, the Court granted the remaining Defendants' summary-judgment motions. [Doc. 174]; [Doc. 183]. Ultimately, the Court entered Judgment [Doc. 190] in favor of Defendants. Plaintiff, now with counsel, then appealed to the Eleventh Circuit. [Doc. 194]. The Eleventh Circuit then affirmed-in-part, reversed-in-part, and remanded the case to this Court. [Doc. 201]. After remand—but before Plaintiff filed his Motion to Amend—several Defendants filed a Motion to Dismiss [Doc. 208]. As the magistrate judge points out, because he granted Plaintiff's Motion to Amend, Defendants' Motion to Dismiss [Doc. 208] is moot. *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007) (citations omitted).

[2] The "Medical Defendants" include Defendants Peter Wrobel, Sharon Broome, Jeannie Vaughn, Chiquita Cox, Rawni Sprauge, and Southern Correctional Medicine.

relevant filings, which resulted in an Order and Recommendation ("O&R") granting Plaintiff's Motion to Amend. Following the magistrate judge's O&R, the Medical Defendants filed the instant Objection[3] [Doc. 237] arguing that many of the magistrate judge's findings and conclusions "constitute[] error." *See, e.g.*, [Doc. 237, p. 13]. Within the 20 pages allotted, they ultimately ask the Court to reverse course, deny Plaintiff's Motion based on a hyper-technical reading of the Federal Rules of Civil Procedure and completely dismiss Plaintiff's case against them. The Court easily declines that request. Plaintiff absolutely will be allowed to go through the discovery process to factually develop his case. Does that mean he will win? Who knows? That is a question for another day. But he will get the chance to put up some evidence and have it tested.

## **DISCUSSION**

The Medical Defendants assert various arguments in the process of asking the Court to deny Plaintiff's Motion to Amend and ultimately dismiss Plaintiff's action against them. First, the Medical Defendants argue that the magistrate judge got it wrong when he applied Federal Rule of Civil Procedure 15(a) to Plaintiff's Motion to Amend. Second, they argue that the magistrate judge erred again because he didn't review the entire evidentiary record of the case during the screening of Plaintiff's

---

[3] This Order includes a few different standards of review. To the extent the Medical Defendants challenge the magistrate judge's decision on nondispositive matters, the Court reviews the O&R for clear error. 28 U.S.C. § 636(b)(1)(A). As to the Medical Defendants' Objections to the potentially dispositive matters, the Court makes a de novo determination of the portions to which objection was made. 28 U.S.C. § 636(b)(1)(C).

3

Amended Complaint [Doc. 213-1]. Third, and relatedly, they argue that the magistrate judge should have considered Jeannie Vaughn's affidavit and its attached medical records. Lastly, the Medical Defendants argue that the Amended Complaint fails to state a claim and that the magistrate judge erred by not considering the evidence as to each individual Medical Defendant apart from the group collectively. The Court addresses each argument in turn.

As to Plaintiff's Motion to Amend, the magistrate judge acted within his authority in deciding the Motion—undeniably a pretrial matter—without the need for a recommendation to the district judge. *See* 28 U.S.C. 636(b)(1)(A) (describing the pretrial matters a magistrate judge is **not** permitted to decide alone, which does not include a motion to amend); *see also Bastidas v. Chappell*, 791 F.3d 1155, 1163 (9th Cir. 2015). Given that the magistrate judge clearly acted within his statutorily-granted authority, a district judge can only disturb such a ruling when it is "shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. 636(b)(1)(A).[4]

"Clear error is a highly deferential standard of review." *Holton v. City Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005) (citation omitted). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

---

[4] The Medical Defendants' procedural remedy for reconsideration or review of a nondispositive magistrate judge order lies in Federal Rule of Civil Procedure 72. However, because the standard of review is the same, the Court considers the arguments without a separate motion.

4

committed." *Id.* (citations omitted); *see also Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997) ("The clear error standard [under Rule 72(a) and 28 U.S.C. § 636(b)(1)(A)] means that the district [judge] can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made."). "A magistrate judge's order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Ellis v. U.S.*, No. 3:15-cv-1078-J-34JBT, 2016 WL 1658706, at *1 (M.D. Fla. Apr. 27, 2016) (punctuation omitted) (quoting *Botta v. Barnhart*, 475 F. Supp. 2d 174, 185 (E.D.N.Y. 2007)).

Although there may be legitimate quibbles over the specifics of Rule 15(a)(1)'s reach when it comes to the number of matter-of-course amendments in multidefendant cases, the Medical Defendants do not point out any legal error that meets the high standard outlined above. In fact, the magistrate judge clearly relied on the plain language of binding Eleventh Circuit precedent that completely supports his analysis to allow Plaintiff's Amended Complaint to proceed. Indeed, in *Williams v. Board of Regents of University System of Georgia*, the Eleventh Circuit explained that "[i]f the case has more than one defendant, and not all have filed responsive pleadings, the plaintiff may amend the complaint as a matter of course <u>with regard to those defendants that have yet to answer</u>." 477 F.3d 1282, 1291 (11th Cir. 2007) (emphasis added). That broad reading of Rule 15(a)(1) does not limit a plaintiff's ability to amend his complaint as a matter of course to only once per action. Rather, under the Eleventh Circuit's plain

5

language, one could logically infer that a plaintiff can exercise one amendment as a matter of course per defendant.[5]

Second, the magistrate judge correctly limited his screening review to the Amended Complaint. To be clear, 28 U.S.C. 1915A(a) requires a court to "review . . . a *complaint* in a civil action[.]" (emphasis added). By its own terms, the review is limited to the operative pleading. Moreover, the standard for § 1915 screenings is the same as that for Federal Rule of Civil Procedure 12(b)(6) motions. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). At the 12(b)(6) stage, a court generally may not consider documents beyond the face of the complaint. *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). More specifically, as to the magistrate judge's consideration of Jeannie Vaughn's affidavit, the Medical Defendants only argue, in conclusory fashion, that the "Order and Recommendation fails to show any consideration" of the medical records and affidavit included with Plaintiff's Motion. [Doc. 237, p. 12]. However, this supposed error wholly fails to warrant intervention to

---

[5] Remember, the Court must review the decision to allow the amendment under a "clearly erroneous" standard. To be clear, the undersigned does not have to adopt or ratify this reading of *Williams* at this time—and it doesn't. However, as discussed above, the Court does not find the magistrate judge's application of *Williams* to this case to be clearly erroneous in light of the Eleventh Circuit's clear holding under these substantially similar facts. Regardless, even if the Court concluded that the magistrate judge's decision was clearly wrong, the proper recourse would be to modify his Recommendation to simply grant Plaintiff's Motion to Amend because justice so requires. *See* Fed. R. Civ. P. 15(a)(2). The Medical Defendants' gripe regarding the magistrate judge's decision boils down to differences between screening under 28 U.S.C. § 1915 versus a futility screening for an amended complaint. However, a futility review "is essentially the same standard [as] an initial review of the sufficiency of a claim under 28 U.S.C. § 1915." *Derocha v. Dewitt Police Dep't*, No. 5:22-CV-1344-DNH-ATB, 2023 WL 2753713, at *1 (N.D.N.Y. Apr. 3, 2023). That means that even if the magistrate judge had evaluated the Amended Complaint for futility, the outcome would be the same.

disturb the magistrate judge's findings. The magistrate judge reviewed the Amended Complaint and issued his O&R—the Court will take him at his word that he reviewed all necessary documents in reaching his conclusion, without requiring him to spell it out frame-by-frame.

The same rings true for the Medical Defendants' arguments regarding the magistrate judge's consideration of them as a group instead of individually or separately. While the magistrate judge's O&R may not have shown a separate review of each individual Defendant under a distinct heading, the O&R clearly revealed that he reviewed each claim against each Defendant. *See* [Doc. 220, pp. 14–15 (noting the claims against the Medical Defendants and analyzing the claims against the various Defendants)]. Simply put, that is enough.

Lastly, the Medical Defendants argue that the magistrate judge committed clear error when he concluded that Plaintiff's Amended Complaint sufficiently stated a claim of deliberate indifference. Again, though, the Medical Defendants seem to miss the field for the grass. Namely, the Medical Defendants argue that the magistrate judge erred by not dismissing Plaintiff's transfer claim based on the prior Eleventh Circuit decision in

this case.[6] However, the Medical Defendants disregard and omit that the portion of the Eleventh Circuit decision regarding the transfer claim (1) involved different Defendants, and (2) was at the summary judgment stage as opposed to a frivolity screening. *Ravan*, 2023 WL 2238853, at *9.[7]

In all, the Court reviewed the magistrate judge's O&R and finds no legal error that warrants diverting from his well-reasoned logic. Simply put, when it comes to the magistrate judge's decision allowing Plaintiff to amend his operative pleading, the Court cannot say that it is left with the firm conviction that he got any nondispositive decision wrong. The magistrate judge's decision allowing the amendment stands.

Regarding his recommendations on dispositive issues, the Court **ADOPTS** the United States Magistrate Judge's Recommendation [Doc. 220] and **MAKES IT THE ORDER OF THE COURT**. Accordingly, the Court **DISMISSES** Plaintiff's deliberate-indifference claims against Defendants Freeman and Jackson based on their alleged failure to move him. Additionally, the Court **TERMINATES** the Food Service

---

[6] To the extent the Medical Defendants want to complain about the alleged errors of the Eleventh Circuit panel, they need to lodge those attacks in that court—not this one. *See* [Doc. 237, p. 3 ("The Court of Appeals . . . evaluated the claims against all defendants under an incorrect standard for deliberate indifference.")]. District courts don't get to grade the papers of a higher court to fix any "perceived error" that it might have made. In the Court's view, the Medical Defendants' criticism of the Circuit panel's reasoning rings particularly hollow given that the Medical Defendants didn't bring it to the Circuit's attention via a motion for reconsideration or other similar motion. Instead, they chose only to bring it up in this Court after the fact.

[7] The Medical Defendants also ask the Court to decline to exercise its supplemental jurisdiction over the state-law claims against them in the event the Court dismisses the federal claims. However, because the Court does not dispose of the federal claims, it will maintain the state-law claims in this action for now. If the situation changes, the Court will re-evaluate the exercise of that jurisdiction at the appropriate time.

Defendants' Motion to Dismiss [Doc. 208] **AS MOOT**.

  **SO ORDERED**, this 24th day of August, 2023.

              S/ Tilman E. Self, III
              **TILMAN E. SELF, III, JUDGE**
              **UNITED STATES DISTRICT COURT**